UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE J. FOXX,

    Plaintiff,

    v.                                                         Case No. 8:11-CV-1766-T-17EAK

OCWEN LOAN SERVICING, LLC,
DEUTSCHE BANK, N.A. TRUST CO.
AS INDENTURE TRUSTEE UNDER
POOLING AND SERVICING
AGREEMENT DATED AS OF MAY
1, 2007 SECURITIZED ASSET
BACKED RECEIVABLES LLC
TRUST, 2007 BR4, STEVEN J
CLARFIELD, ESQ., ROBERT C.
OKON, ESQ.,

    Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on Defendants Steven J. Clarfield, Esq. and Robert C. Okon, Esq.'s Motion to Dismiss (Dkt. 39), Defendant Ocwen Loan Servicing LLC's Motion to Dismiss Class Allegations (Dkt. 43), and the respective responses thereto (Dkt. 41, 46). For the reasons set forth below, Defendants Clarfield and Okon's Motion to Dismiss is **GRANTED IN PART** without prejudice as to Counts I, II, III, IV, and VI and **GRANTED IN PART** with prejudice as to Count V. Further, Defendant Ocwen's Motion to Dismiss Class Allegations is **GRANTED** without prejudice. The following facts, gleaned from Plaintiff's Amended Complaint (Dkt. 40), are taken as true for purposes of this motion.

1

## BACKGROUND

Plaintiff, George J. Foxx (hereinafter "Foxx"), brings the instant claim against Ocwen Loan Servicing, LLC (hereinafter "Ocwen"), Deutsche Bank Trust NA, and Steven J. Clarfield and Robert C. Okon (hereinafter the "Lawyer Defendants") for wrongfully foreclosing upon his home. According to the complaint, Defendants Clarfield and Okon were Ocwen's lawyers from May 2011 through the initiation of this action; as such, they "acted as the duly authorized agent[s]" of Ocwen. (Dkt. 40, ¶ 8, 9). Ocwen, for its part, serviced home mortgage loans originated by other lenders, and in that capacity was permitted to "collect monthly payments from the mortgagor, collect late payments from him, foreclose in the event of default, or place the mortgagor's payments for taxes and insurance premiums in escrow." (Dkt. 40, at 3).[1]

The present dispute stems from Foxx's claim that he was "served with wrongful foreclosure legal proceedings after having engaged in a 'Streamlined Modification Agreement' (hereinafter SMA)." (Dkt. 40, ¶ 15). Though the complaint is inartfully pled and difficult to follow, the gist of the story appears to be that Ocwen sent Foxx an offer to modify his mortgage if he filled out certain paperwork and forwarded it, along with the first modification payment, to Ocwen. (Dkt. 40, ¶ 15). Foxx complied by mailing the paperwork and payment, which he believed constituted acceptance of Ocwen's offer to modify the mortgage, thus consummating a new, modified agreement. Foxx eventually sent three more payments under the alleged modification agreement, but Ocwen nonetheless filed suit on June 21, 2011 to foreclose upon Foxx's home. (Dkt. 40, ¶ 16).

Foxx claims that Ocwen received his payments but failed to credit them to his account or render his account current, as required by the SMA. He then "sent more than twenty (20)

---

[1] Plaintiff's Complaint (Dkt. 40) randomly switches from paragraphed format to non-paragraphed format; where possible, this Court will cite to the specific paragraph number, but where that is not possible, the Court will resort to citing to the relevant page or pages.

certified letters demanding payment . . . be credited and [his account] brought current, to no avail." (Dkt. 40, ¶ 22). Foxx further avers that the Lawyer Defendants sent him a letter on July 29, 2011 "acknowledging receipt of Plaintiff's certified correspondence" in which they "attempted to justify the breach of contract[,] stating the terms [of the SMA] were not accepted under the terms initiated [sic]." (Dkt. 40, ¶ 18). Foxx has purportedly "verified that the payment[s] under the SMA w[ere] accepted but not credited to his account." (Dkt. 40, ¶ 31). Accordingly, Foxx asserts that "[t]he Defendant Ocwen seeks to null [sic] and void the SMA and thereafter charge Plaintiff well in excess of the agreed upon amount in excess of $260,000.00 in adverse to the SMA terms [sic]."

Foxx also claims that his credit bureau accounts report an unpaid balance of $260,000.00 and that there is no indication that this charge is in dispute. (Dkt. 40, ¶ 25). He explains that he repeatedly notified Ocwen, Deutsche Bank Trust NA, and the Lawyer Defendants of his disagreement with their actions and that they were in breach of the SMA, but his pleas were ignored. (Dkt. 40, ¶ 27–31). According to Foxx, by August 2011, Ocwen and the Lawyer Defendants continued to pursue the foreclosure and lis pendens actions despite being aware, due to the twenty-some notices he had mailed them, of the allegedly current nature of Foxx's account. (Dkt. 40, ¶ 35–37).

Based on the foregoing, Foxx brings six claims: one each under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p (Count I); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x (Count II); the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55–559.785 (Count III); the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213 (Count IV); one for intentional infliction of emotional distress (Count V), and, finally, one for breach of contract (Count VI).

Foxx additionally pleads class action allegations (albeit in a cursory manner) and requests punitive damages. He prays for injunctive relief, actual money damages of $260,000.00, statutory damages of $100,000.00 on each of Counts I through IV, punitive damages of $2,700,000.00, and attorney's fees and costs. (Dkt. 40, at 21–22).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8(a)(2) requires that a plaintiff's complaint lay out "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). That said, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007) (internal quotation marks and citation omitted).

Therefore, "to survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss, courts follow a simple, two-pronged approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). In sum, the "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

At the outset, and before reaching the merits of the instant motions, the Court deems it sage to make a more general observation regarding Foxx's complaint. Though this complaint may have been sufficient, on the whole, prior to the Supreme Court's enunciation of the proper pleading standards for federal litigation in *Iqbal* and *Twombly*, in a post-*Iqbal* world there is no doubt that the perfunctory nature of Plaintiff's complaint is, to be frank, woefully insufficient. In addition to being conclusory, the complaint is laden with typographical and grammatical errors, and it was at times quite difficult for the Court to discern Plaintiff's meaning due to the lack of attention to detail and precision throughout the document. The Court is mindful that the practice of law is not an exercise in English composition, but a party in litigation will not get far if he is unable to communicate his point to the Court and to any adverse parties. In light of these factors, the Court has exercised restraint in not dismissing Plaintiff's entire complaint as procedurally deficient. Having said that, the Court turns to consider the sufficiency of each of Foxx's claims in turn.

1. **The Lawyer Defendant's Motion to Dismiss**

   *A. FDCPA*

Foxx fails to state a claim for a violation of the FDCPA. "In order to prevail on an FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any

business the principal purpose of which is the collection of any debts, or who regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (2006); *see Madura v. Lakebridge Condo. Ass'n Inc.*, 382 F. App'x 862, 864 (11th Cir. 2010). Further, the FDCPA's definition of debt collector specifically excludes "any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). "Thus, 'a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'" *Belin v. Litton Loan Servicing, LP*, No. 8:06-cv-760-T-24EAJ, 2006 WL 1992410, at *2 (M.D. Fla. July 14, 2006); *see Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460–61 (11th Cir. 2009) (noting its agreement with the conclusion that "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)." (alterations in original)).

Turning to the case *sub judice*, it is plain that Foxx has failed to properly allege that any of the defendants are debt collectors within the meaning of the FDCPA with respect to the mortgage loan at issue. *Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (Conway, C.J.) ("[U]nder the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors,' as long as the debt was not in default at the time it was assigned." (internal quotation marks omitted)); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009). In his complaint, Foxx admits that Ocwen is the servicer of the mortgage at issue, but fails to allege that the mortgage was assigned to Ocwen after it had fallen into default. (Dkt. 40, at 2–3).

6

Therefore, as currently pleaded, Foxx's claim fails as a matter of law and must be dismissed without prejudice. *Correa*, 2012 WL 1176701, at *12 ("Having found that Plaintiff has failed to allege that [the Defendants] are debt collectors under the FDCPA, the claims against them are dismissed."); *see Locke v. Wells Fargo Home Mortg.*, No. 10-60286-Civ, 2010 WL 4941456, at *2 (S.D. Fla. Nov. 30, 2010) (dismissing FDCPA claim with prejudice and explaining that, "[s]ince [the defendant] was the mortgage company servicing the Plaintiff's mortgage, it cannot be liable as a 'debt collector' under section 1692"); *Reese*, 686 F. Supp. 2d at 1307–08 (dismissing claims against creditor and mortgage servicer because they were not debt collectors under the FDCPA); *see also Bentley*, 773 F. Supp. 2d at 1371 (same). If Foxx believes his mortgage was indeed in default when it was assigned to Ocwen, he should so state in the event he elects to amend the complaint.

But even if Foxx had properly pleaded that any of the defendants was acting in the capacity of a debt collector for purposes of the FDCPA, Count I would still be subject to dismissal. First of all, Foxx alleges no facts whatsoever under Count I of his complaint, let alone facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see* Dkt. 40, ¶¶ 42–47 (merely citing statutory sections Ocwen allegedly violated); *see also Correa*, 2012 WL 1176701, at *11 ("Plaintiff fails to plead factual allegations to support her claims under the FDCPA; instead, Plaintiff cites statutory provisions and recites their language almost verbatim. Thus, instead of alleging facts, Plaintiff alleges legal conclusions." (citing *Iqbal*, 129 S. Ct. at 1949)). Foxx is further admonished that "[a] shotgun pleading where it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief does not comply with [post-*Iqbal* pleading] standard[s]." *Peavey v. Black*, No. 11-13925, 2012 WL 986801, at *2 (11th Cir. Mar. 23, 2012).

As the Eleventh Circuit recently explained:

> We have often criticized this kind of complaint because:
>
>> Shotgun pleadings impede the administration of the district courts' civil dockets in countless ways. The district court, faced with a crowded docket and whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials. It is therefore left to this court to sort out on appeal the meritorious issues from the unmeritorious ones, resulting in a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice.

*PVC Windoors, Inc. v. Babbitbay Beach Const. N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010). Foxx's complaint is a shotgun pleading, and Count I is devoid of any facts to support the claim for which it purports to stand; the Lawyer Defendant's motion to dismiss Count I is granted without prejudice.

### B. FCRA

Foxx next brings a claim under the FCRA for the Defendants' alleged failure to "adequately conduct an investigation" or "report the results of the investigation to the consumer reporting agencies" before disclosing information negatively affecting his creditworthiness. (Dkt. 40, ¶¶ 49–55). He claims he "notified the Defendants . . . that their acts and actions were wrongful . . . more than twenty (20) times" but his complaints were ignored. (Dkt. 40, ¶ 17); *see* Dkt. 40, ¶ 55 (complaining that Ocwen did not correct Foxx's credit report despite "multiple reinvestigation requests from multiple notices from the Plaintiff").

The FCRA governs claims by consumers, like Foxx, against a furnisher of credit information, like Ocwen, for the furnishing of allegedly incorrect information regarding the consumer to a credit reporting agency (CRA). 15 U.S.C. §§ 1681a(c), 1681(a)(f), 1681s-2(a). The requirements of the FCRA are twofold: first, § 1681s-2(a) requires furnishers to submit

accurate information to CRAs; second, pursuant to § 1681s-2(b) furnishers must investigate and promptly respond to notices of consumer disputes. *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). The FCRA does not provide a private right of action for violations of the first requirement, § 1681s-2(a)—enforcement of that provision is left to federal and state agencies as guarantors of the people's rights. *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F. Supp. 2d 1318, 1327 (M.D. Fla. 2009) ("[T]here is no private right of action under 15 U.S.C. § 1681s-2(a)(1)(A) and (B).").

As for the second requirement, "[t]he FCRA does provide a private right of action for violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Green*, 288 F. App'x at 642; *see Osborne v. Vericrest Financial, Inc.* No. 8:11-cv-716-T-30TBM, 2011 WL 1878227, at *2 (M.D. Fla. May 17, 2011) ("Federal law is clear that in order to allege a claim under section 1681s-2(b), a plaintiff must allege that the defendant received notice of the dispute from a consumer reporting agency."). In other words, a private right of action for violations of § 1681s-2(b) "exists only for violations post-dating the furnisher's receipt of a report *from the credit reporting agency*." *Elmore v. North Fork Bancorporation, Inc.*, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (emphasis in original).

The problem with Foxx's FCRA claim, of course, is that he never alleges he notified a CRA of his dispute, or that Ocwen ever received the statutorily required notice from a CRA. This detail is fatal to his claim. Indeed, "an allegation that the notice of the dispute was provided directly from plaintiff to defendant is insufficient to state a claim." *Osborne*, 2011 WL 1878227, at *2; *see Wallace v. Mortgage Elec. Registration Sys., Inc.*, No. 8:10-cv-2509-T-23AEP, 2011 WL 1298195, at * 4 (M.D. Fla. Apr. 1, 2011) (granting motion to dismiss because "plaintiff fail[ed] to allege notice of a dispute to either a credit reporting agency or to the

defendants (by a credit reporting agency) as required by the FCRA"); *see also Elmore*, 325 F. Supp. 2d at 340 ("If Congress had meant to create liability for violations once the furnisher had notice from any source of the existence of a dispute, it would have been a simple matter to say so . . . This Court is not free to take a blue pencil to statutes of the United States."). Foxx's notices directly to Ocwen are insufficient to trigger § 1681s-2(b). If he elects to amend his complaint and can demonstrate that he notified a CRA of the dispute and that Ocwen failed to respond accordingly, he may well have a colorable claim. However, that is for another day—with regard to the present motion, Count II of Foxx's complaint is dismissed without prejudice.

### C. FCCPA

In Count III, Foxx asserts that the Lawyer Defendants violated the FCCPA by, *inter alia*, (1) telling Foxx that "OCWEN ET AL" was disclosing information relating to his creditworthiness to CRAs without also informing him that the existence of his dispute would be noted, in violation of Florida Statute section 559.72(3); (2) disclosing information regarding Foxx's reputation for creditworthiness to Equifax (a CRA) with knowledge or reason to know the information was false, in violation of Florida Statute section 559.72(5); (3) filing a lis pendens with knowledge or reason to know it was wrongful, in violation of Florida Statute section 559.72(6); (4) disclosing information concerning a debt known to be reasonably disputed without disclosing that fact, in violation of Florida Statute section 559.72(6); and (5) claiming, attempting, or threatening to enforce a debt they did knew or had reason to know was not legitimate, in violation of Florida Statute section 559.72(9). (Dkt. 40, ¶¶ 57–63). The Lawyer Defendants move to dismiss the claim, arguing that litigation immunity protects them from suit for any actions relating to the foreclosure litigation.

The Lawyer Defendants correctly argue that they are entitled to litigation immunity for the filing of the lis pendens and foreclosure actions against Foxx. *Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007), *aff'd*, 258 F. App'x 571 (11th Cir. 2008); *see Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383–84 (Fla. 2007); *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 607 (Fla. 1994). What is more, actions to foreclose upon a mortgage are not "debt collection" activity for purposes of the FCCPA, so these allegations would fall short in any event. *Trent*, 618 F. Supp. 2d at 1360.

Insofar as the Lawyer Defendants argue that they are entitled to litigation immunity for their pre-suit communications with third-parties and/or Foxx, however, they are wrong—their pre-suit communications are not subject to immunity and, as such, are fair fodder. *Id.* But Count III must still be dismissed. That is so for two reasons. First, Foxx only actually refers to the Lawyer Defendants in Count III with regard to the wrongful filing of the lis pendens. (Dkt. 40, ¶ 59). All of the other allegations refer generically to all defendants and are completely devoid of any specific factual allegations. Many of the allegations in the complaint speak generally of "OCWEN ET AL," and the Court has no way of knowing whom Foxx is actually accusing of doing any given thing. And that is too bad, because had he not lumped all Defendants together and parroted the language of the statute, Foxx may well have had a putative claim for violation of the FCCPA. But he did not, and the Court thus finds that Foxx's claims "should be dismissed without prejudice as Plaintiff improperly lumps Defendants together in these claims despite that Defendants are separate and distinct legal entities." *Bentley*, 773 F. Supp. 2d at 1373.

Foxx's claim is also subject to dismissal because he again fails to plead any of the factual allegations necessary for the Court to determine whether his claim "plausibly give[s] rise to an

entitlement to relief." *Iqbal*, 129 S. Ct. 1937 at 1950. Instead, his "claims merely track[] the language of section 559.72[], and such conclusory allegations will not prevent dismissal." *Locke*, 2010 WL 4941456, at *2 (citing *Iqbal*, 129 S. Ct. at 1951); *see Reese*, 686 F. Supp. 2d at 1310 (dismissing FCCPA claims because the complaint "only contains conclusory allegations, and is not supported by the facts necessary to establish [plaintiff's] case"). Count III is dismissed without prejudice.

### D. FDUTPA

Foxx's Count IV purportedly sets forth a claim under FDUTPA. FDUTPA prescribes a broad standard of conduct for Florida's businesses, providing that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204. "The Florida Supreme Court has noted that 'deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). And "[w]hile a deceptive practice is likely to mislead consumers, an unfair practice offends public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Lydia Sec. Monitoring, Inc. v. Alarm One, Inc.*, No. 07-80145 CIV, 2007 WL 2446889, at *4 (S.D. Fla. Aug. 23, 2007).

If Foxx can show that he was misled and that he reasonably believed the SMA would bring his account current, his claim that Defendants violated FDUTPA may in fact be the strongest of the lot. But Foxx's complaint again contains not a single factual allegation under Count IV. Instead, the complaint incorporates the general facts by reference and then states: "The actions stated herein and carried out by the defendants OCWEN ET AL were violations of

Florida State and Federal Law, and are therefore unfair and/or deceptive trade practices as defined by state statute 501.203(3)." (Dkt. 40, ¶ 65). Having laid that backdrop, this Court need not belabor the point, because Foxx's pleading so clearly falls short of *Iqbal*'s command. *See Correa*, 2012 WL 1176701, at 14 ("[T]he Court will not cobble together Plaintiff's disorganized allegations to create a plausible cause of action."). Foxx's complaint must put the Court and the Defendants on notice as to the substance of each claim, and that it plainly fails to do. Count IV is, on its face, no more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. As such, it is dismissed without prejudice.

E. *Intentional Infliction of Emotional Distress*

Count V of Foxx's complaint sets forth a claim for intentional infliction of emotional distress. In Florida, such a claim is viable, but the conduct alleged must be truly severe and outrageous. *Lopez v. Target Corp.*, 676 F.3d 1230, 2012 WL 1174505, at *6 (11th Cir. 2012). In fact:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whatever may be said of Defendants' alleged behavior in this case, there is no doubt that it does not meet the lofty standard described above. To be plain, the tort of intentional infliction of emotional distress contemplates behavior of the rare, exceptional sort, and this case is simply not of that ilk. *See, e.g., Thomas v. Hosp. Bd. of Dir. of Lee Cnty.*, 41 So. 3d 246, 256 (Fla. Dist. Ct. App. 2010) (reversing grant of summary judgment on intentional infliction of emotional distress claim where hospital made false statements about

13

decedent's cause of death and those statements led to the interruption of decedent's funeral and return of her body for a second, more thorough autopsy). Count V fails as a matter of law and is dismissed with prejudice.

F. *Breach of Contract*

Foxx's final claim is for breach of contract; in it, he submits: "Defendant OCWEN in the mortgagee's breach of contract is wrongful in its acts and actions to fraudulently represents to the mortgagor that it will forgive a default, bring the debt current, and then forecloses, and continue is the process or failed to stop the process once notified after more than twenty (20) certified notices qualifies for punitive damages [sic]." (Dkt. 40, ¶ 71). From what the Court can discern, Foxx claims that Ocwen breached the SMA by failing to modify his mortgage in accordance with the SMA followings its execution.

In Florida, "[t]o establish a breach of contract, a plaintiff must allege the existence of a valid contract, which requires: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Locke*, 2010 WL 4941456, at *3. Foxx's conclusory allegations fail to set forth the predicate facts necessary to claim a breach of contract. The discussion of FDUTPA and deceptive practices in Count VI are patently inapposite to his claim for breach of contract. (Dkt. 40, ¶¶ 72, 74). Disregarding those portions of the complaint as immaterial, Foxx is left with only bald assertions regarding the breach of contract. Such legal conclusions fail to state a claim. And, of course, there remains the seemingly ubiquitous problem that the allegations refer to all Defendants in a blanket manner and fail to actually accuse the Lawyer Defendants of doing anything at all to breach the purported agreement. For these reasons, Count VI must fail.

That is not to say that Foxx could not have a valid claim for breach of contract should he elect to amend his complaint. To the contrary, this entire case strikes the Court as a breach of contract claim. Thus, when properly pleaded to demonstrate the actual contract purportedly in existence and how each of the Defendants (if they were bound) breached said contract, Foxx's breach of contract action may be viable. At this juncture, however, it is not; Count VI is dismissed without prejudice.

### 2. Motion to Strike Punitive Damages

The Lawyer Defendants next contend that Foxx's prayer for punitive damages must be stricken because he fails to comply with Florida Statute section 768.72, which the Lawyer Defendants assert "bars a prayer for punitive damages for claims arising under Florida law unless and until reasonable proof is adduced of an entitlement to such damages." (Dkt. 39, at 12). The Lawyer Defendants correctly lay out Florida Statute section 768.72 and its requirements. However, insofar as they suggest that a party seeking punitive damages in *federal* court must comply with the statute, they are wrong. "Florida Statute § 768.72 conflicts with and must yield to the 'short and plain statement' rule contained in Federal Rule of Civil Procedure 8(a)(3), and as a result a Florida plaintiff in federal court because of diversity jurisdiction need not obtain leave of court before pleading a request for punitive damages." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000). Consequently, Foxx was free to plead his claim for punitive damages without having to slake the exacting requirements of section 768.72. *Perez v. Saxon Mortg. Servs.*, No. 8:06-cv-1239-T-24TBM, 2006 WL 430723, at *1 (M.D. Fla. Feb. 5, 2007) (permitting punitive damages claim without proffer under section 768.72 in FDCPA and FCCPA claim). The motion to strike Foxx's prayer for punitive damages is denied.

### 3. Motion to Strike Class Allegations

Ocwen moves to dismiss the class allegations for failure to comply with Local Rule 4.04(a). Rule 4.04(a) provides:

> In any case sought to be maintained as a class action pursuant to Rule 23, Fed. R. Civ. P., the complaint shall contain, under a separate heading styled "**CLASS ACTION ALLEGATIONS**", detailed allegations of fact showing the existing of the several prerequisites to a class action as enumerated in Rule 23(a) and (b), Fed. R. Civ. P.

M.D. Fla. R. 4.04(a). The prerequisites to which the Local Rule refers are those of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).

Having set forth the standard for pleading a class action claim, it quickly follows that Foxx's single, conclusory paragraph of "class allegations" falls far short of the mark. (Dkt. 40, at 20–21). There is no indication whatever in the complaint of who might comprise Foxx's putative class. And though Foxx attempts to cure this deficiency by providing more details as to the proposed class in his response to Ocwen's motion, the infirmities of his complaint cannot be rehabilitated via a response to a defendant's dispositive motion. Instead, the proper avenue for Foxx to rectify the procedural deficiencies of his complaint is the amendment of that pleading. Thus, the Court ends where it began: with Foxx's potentially colorable claims stymied by his failure to comply with the federal and local rules of civil procedure. Ocwen's motion to dismiss the class allegations is granted without prejudice.

It bears mentioning that, even if Foxx amends his class allegations to survive a motion to dismiss, he may still be unable to meet certain requirements of class certification when and if he moves to do so. For example, the adequacy of representation prong of Rule 23(a) "most often has been described to 'involve[] questions of whether plaintiffs' counsel are qualified,

experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see Spinelli v. Capital One Bank*, 265 F.R.D. 598, 602 (M.D. Fla. 2009). Though it would be premature to make any definitive conclusions now, in light of the glaring deficiencies in his complaint, the Court is left with serious questions relating to Foxx's ability to meet the adequate representation prong and thereby certify a class pursuant to Rule 23(a).

At bottom, this case exemplifies why the Eleventh Circuit has evidenced such distain for shoddy, shotgun pleading. The Court has now devoted precious resources to the disposition of the instant motions, but has not actually accomplished anything at all because (with the exception of Count V) Foxx must be permitted leave to amend. The parties' substantive rights are largely unchanged; instead, this entire exercise has been undertaken merely to point out the already obvious shortcomings of Foxx's pleading. It is sad that so much time has elapsed and such great effort has been wasted on so feckless a pursuit. Having said that, it is nonetheless

**ORDERED** that the Lawyer Defendant's Motion to Dismiss be **GRANTED IN PART** without prejudice as to Counts I, II, III, IV, and VI, and **GRANTED IN PART** with prejudice as to Count V. Defendant Ocwen's Motion to Dismiss Class Allegations is further **GRANTED** without prejudice. The Plaintiff has ten (10) days to file any amended complaint or this entire case will be dismissed.

**DONE AND ORDERED** in Chambers, in Tampa, Florida this 6th of June, 2012.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.